IN THE UNITED STATES DISTRIC COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Case No. 12-cv-0044-MJR-SCW |
| | ) | |
| $304,980 in U.S. CURRENCY, | ) | |
| ONE 2006 PETERBILT SEMI | ) | |
| TRACTOR-TRAILER (Model 379), | ) | |
| and ONE 2004 GREAT DANE | ) | |
| REFRIGERATED SEMI TRAILER | ) | |
| (Model SE), | ) | |
| | ) | |
| Defendants. | ) | |

MEMORANDUM AND ORDER

REAGAN, District Judge:

A.  Introduction

By verified complaint filed in this Court, the United States of America ("the Government") seeks the civil forfeiture of $304,980 in United States currency plus a tractor-trailer with its attachments and components, all of which was seized during an August 2011 traffic stop on Interstate 70 in Madison County, Illinois (within this Judicial District).  Two Claimants contest the forfeiture – (1) Randy Davis, the 55-year old truck driver who was the sole occupant of the tractor-trailer when it was stopped on I-70; and (2) Randy's wife, Delores Davis.  The Davises claim that they lawfully own the tractor-trailer and the money found inside the sleeping compartment of the truck.  The Davises filed a verified answer with their claims on February 2, 2012.

Discovery proceeded, motions were filed and ruled on -- including a motion to suppress evidence (on which a full evidentiary hearing was conducted) and a motion for summary judgment, judgment on the pleadings, or to strike. Bench trial is set to commence on April 8, 2013, following a March 22, 2013 final pretrial conference.

Now before the Court is the Government's January 15, 2013 motion for summary judgment (Doc. 33), which ripened with the filing of the Davises' response on February 14, 2013 (Doc. 42). For the reasons explained below, the Court denies the motion.

B. Summary of Key Facts and Allegations

Having thoroughly delineated the facts in the January 3, 2013 Order denying suppression and summary judgment/judgment on the pleadings (Doc. 31), the undersigned Judge need only briefly summarize the key points here.

On August 26, 2011, two DEA Task Force Officers (Kevin Thebeau and Derek Hoelscher) were working a drug interdiction detail along I-70. They conducted a traffic stop of a blue 2006 Peterbilt tractor-trailer which they observed following another vehicle too closely. The officers issued a warning citation and engaged in conversation with the driver (Randy Davis), advising him that they were looking for large quantities of illegal drugs or U.S. currency. Ultimately, the officers secured consent to search the vehicle. In the sleeping compartment, in an unlocked bin under the plywood board that supported the mattress, the officers discovered over $304,000 in United States currency. The currency was rubber-banded together inside "Ziplock" freezer bags. Photos of the currency, as packaged, were provided with prior briefs in this case (*see, e.g.,* attachments to the Declaration of DEA Special Agent Michael Rehg, Doc. 34-16 through 34-18).

Randy Davis was taken into custody and later released. The tractor-trailer and currency were seized. According to the declarations of Officer Hoelscher and a third DEA Task Force Officer, Christopher Singleton (Docs. 34-3, 34-11), a K-9 sniff performed at the scene (by Officer Dean Bastilla of the Granite City, Illinois Police Department and his K-9 partner, Am) resulted in a positive alert for the odor of illegal narcotics on the currency, and a K-9 sniff conducted at the DEA's office in Fairview Heights, Illinois (by Singleton and his canine partner, Paco, this time using a series of five identical paper bags on the floor, one with the evidence seized from the Peterbilt, another with freshly-purchased Ziplock baggies of the same type used to package the seized currency, and three completely empty) resulted in a positive alert for the odor of narcotics on only the bag with the seized currency.

The Government alleges that the currency was furnished or intended to be furnished in exchange for a controlled substance, or proceeds traceable to such an exchange, or property used to facilitate a violation of 21 U.S.C. 801, et seq., and thus subject to forfeiture under 21 U.S.C. 881(a)(6). The Government alleges that the tractor-trailer is a conveyance used or intended to be used to transport, or to facilitate the transportation, sale, receipt, possession or concealment of a controlled substance, rendering the tractor-trailer forfeitable under 21 U.S.C. 881(a)(4).[1]

---

[1] On joint motion of the parties, the Court authorized the interlocutory sale of the tractor-trailer, with the proceeds being held by the United States Marshal as a substitute *res* pending final disposition of this matter (see Docs. 35, 36).

Randy Davis does not face criminal charges arising from the traffic stop and discovery of the currency. He is not a named defendant in any criminal proceeding. Rather, he is a claimant in this civil proceeding; the *res* is the named Defendant. This Court previously held that the Davises had standing to challenge the seizure of the *res*, that the traffic stop was proper, and that Randy Davis consented to the search that led to the discovery of the currency.

    C.    <u>Summary of Standards Applicable to Civil Forfeiture Actions</u>

"Under the forfeiture provisions of the Comprehensive Drug Abuse Prevention & Control Act of 1970, 21 U.S.C. 881, property used to commit a violation of the Act, including proceeds traceable to drug trafficking, are forfeitable." ***United States v. $506,231 in U.S. Currency*, 125 F.3d 442, 451 (7th Cir. 1997).** As the party seeking forfeiture, the government bears an initial burden to show that property is subject to forfeiture. The government may use direct evidence, circumstantial evidence and hearsay evidence to show a nexus between the seized property and illegal activity. ***Id.*** After this showing is made, the "ultimate burden shifts to the claimant" to prove that the property is *not* subject to forfeiture by demonstrating that the property was not used in connection with any illegal activity. ***Id., citing United States v. All Assets and Equipment of West Side Bldg Corp.*, 58 F.3d 1181, 1187 (7th Cir. 1995), *cert. denied*, 516 U.S. 1042 (1996).**

In its January 2013 motion denying the Davises' suppression motion, the Court explained that unlike criminal forfeitures, civil forfeitures operate *in rem* against the property itself, under the theory that the property is guilty of the wrongdoing; the

property owner's culpability is not considered in determining whether the property should be forfeited, and a conviction of the owner is irrelevant in a civil forfeiture proceeding. *See* Doc. 31, p. 10; **U.S. v. Ursery, 518 U.S. 267, 275 (1996) (In *in rem* forfeitures, the property is considered the wrongdoer and proceeded against, as if it were conscious instead of inanimate).**

If the case goes to trial, the government bears the burden of establishing by a preponderance of the evidence that the property is subject to forfeiture. And if the government's theory is that the property was used to commit or facilitate the commission of a criminal offense, the government must establish that there was a *substantial connection* between the property and the offense. As the Seventh Circuit explained when analyzing the civil forfeiture provision of the Controlled Substances Act, 21 U.S.C. 881(a)(6):

> Civil forfeiture standards are now subject to the Civil Asset Forfeiture Reform Act of 2000 ("CAFRA"), 18 U.S.C. § 983(c)(1). CAFRA heightens the government's evidentiary burden in civil forfeitures - the government must demonstrate by a preponderance of the evidence that the property sought is subject to forfeiture. *See id*….
>
> Furthermore, § 983(c)(3) provides that "if the Government's theory of forfeiture is that the property was used to commit or facilitate the commission of a criminal offense, or was involved in the commission of a criminal offense, the Government shall establish that there was a substantial connection between the property and the offense." *Id.*

**United States v. Funds in Amount of Thirty Thousand Six Hundred Seventy Dollars, 403 F.3d 448, 454 (7th Cir. 2005).** With that background, the Court turns to the pending motion.

D. Analysis

Federal Rule of Civil Procedure 56 governs motions for summary judgment. Summary judgment should be granted if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *Anderson v. Donahoe,* **699 F.3d 989, 994 (7th Cir. 2012),** *citing* **FED. R. CIV. P. 56(a).**

In assessing a summary judgment motion, the district court views all facts in the light most favorable to – and draws all reasonable inferences in favor of -- the nonmovants. *Anderson,* **699 F.3d at 994,** *citing Ault v. Speicher,* **634 F.3d 942, 945 (7th Cir. 2011).** *Accord Righi v. SMC Corp.,* **632 F.3d 404, 408 (7th Cir. 2011);** *Delapaz v. Richardson,* **634 F.3d 895, 899 (7th Cir. 2011);** *Spivey v. Adaptive Marketing, LLC,* **622 F.3d 816, 822 (7th Cir. 2010);** *Reget v. City of La Crosse,* **595 F.3d 691, 695 (7th Cir. 2010).** Once the movant challenges the factual support and legal soundness of the plaintiff's claim, the plaintiff acquires the burden of demonstrating that a genuine fact issue remains for trial. *Marcatante v. City of Chicago,* **657 F.3d 433, 440 (7th Cir. 2011),** *citing Boumehdi v. Plastag Holdings, LLC,* **489 F.3d 781, 787 (7th Cir. 2007).**

A genuine issue of material fact remains "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Serednyj v. Beverly Healthcare, LLC,* **656 F.3d 540, 547,** *citing Anderson v. Liberty Lobby, Inc.,* **477 U.S. 242, 248 (1986).** In other words, to survive summary judgment, the nonmovant must produce admissible evidence on which a rational trier of fact could find in his favor. *Maclin v. SBC Ameritech,* **520 F.3d 781, 786 (7th Cir. 2008).**

In ruling on a summary judgment motion, this Court can consider any evidence that would be admissible at trial. "The evidence need not be admissible in form (for example, affidavits are not normally admissible at trial), but it must be admissible in content." *Harney v. City of Chicago*, **702 F.3d 916, 922 (7th Cir. 2012).** For example, under Rule 56(c), a district court "may consider answers to interrogatories when reviewing a motion for summary judgment so long as the content of those interrogatories would be admissible at trial." *Johnson v. Holder*, **700 F.3d 979, 982 (7th Cir. 2012),** *quoting Hardrick v. City of Bolingbrook,* **522 F.3d 758, 761 (7th Cir. 2008).**

In the case at bar, the Government argues that the evidence in the record (taken together with a permissible inference it urges this Court to draw) warrants the grant of summary judgment. As to the evidence showing the forfeitability of the res, the Governments points to the declarations under penalty of perjury made by several DEA Task Force Officers and Special Agents (e.g., Hoelscher, Singleton and Rehg) and the Davises' discovery responses. The motion asserts that this evidence, taken with the Davises' "blanket invocation" of the Fifth Amendment to the United States Constitution (Doc. 34, p. 2), leaves no material fact issue and entitles the Government to judgment as a matter of law. For the reasons explained below, the Court rejects the Government's argument.

It bears note that there was an early set of discovery propounded by the Government and answered by the Davises through counsel, after which (on motion of the Davises), discovery was stayed pending resolution of the suppression motion. Once suppression was denied, discovery resumed.

The Government's requests for admission of fact contained 210 requests (an identical set of these 210 requests for Randy Davis and Delores Davis).  The Davises did not invoke the Fifth Amendment in the first round of discovery responses.  Rather, they responded with broadly-worded answers.  For instance, when asked to provide specifics as to the source of the seized currency and when they obtained it, the Davises responded "WAGES/SAVINGS" and "BIRTH TO CURRENT" (*see* Doc. 21, pp. 6-8 and attachments thereto).  The Davises then secured a stay of discovery herein, a stay which expired when the undersigned ruled on the suppression motion.

When discovery resumed in January 2013, the Davises invoked their rights under the Fifth Amendment (*see* Docs. 34-1, 34-2).  The Davises refused to answer any interrogatories or requests to admit, and they advised the Government that they would similarly refuse to answer any questions if deposed (*see* Doc. 34-1).  Conceding that Randy and Delores Davis have the "undisputable right to assert the Fifth Amendment" herein (Doc. 34, p. 2), the Government urges the Court to apply the rule that an adverse inference arises from the Davises' invocation.

The Fifth Amendment to the United States Constitution protects individuals from compelled self-incrimination in criminal cases. **U.S. CONST. amend. V.** The "core protection" afforded by this clause is a prohibition against compelling a criminal defendant to testify against himself at trial. ***United States v. Patane*, 542 U.S. 630, 537-38 (2004).** Clearly, though, the caselaw recognizes the assertion of the Fifth Amendment self-incrimination privilege in non-criminal cases and contexts. ***See, e.g., Chavez v. Martinez*, 538 U.S. 760, 770 (2003); *McKune v. Lile*, 536 U.S. 24, 54 (2002),** *citing*

*Lefkowitz v. Turley*, **414 U.S. 70, 77 (1973) (privilege extends to official questions put to an individual in proceedings, civil or criminal, formal or informal, where the answers might incriminate him in future criminal proceedings).**

The Fifth Amendment also may be invoked by claimants in civil forfeiture proceedings, although not without consequences, for example, if the Fifth Amendment is used as a sword instead of a shield. *See, e.g., **United States v. $133,420 in U.S. Currency**, 672 F.3d 629, 641-44 (9th Cir. 2012); **United States v. $148,840 in U.S. Currency**, 521 F.3d 1268, 1277 (10th Cir. 2008).* Here, the Government asks the Court to recognize another consequence of reliance on the privilege against self-incrimination – an adverse inference may be drawn in certain *civil* actions from the invocation of the Fifth Amendment.

> The United States Court of Appeals for the Second Circuit has explained:
>
> A defendant in a civil proceeding who invokes the Fifth Amendment as a result of an overlapping criminal investigation or proceeding "risk[s] the adverse inference arising from [his or her] assertion of the privilege."... **The Supreme Court has explained "that the Fifth Amendment does not forbid adverse inferences against parties to civil actions when they refuse to testify in response to probative evidence offered against them."** *Baxter v. Palmigiano,* **425 U.S. 308, 318 ... (1976)**; *see also Keating v. Office of Thrift Supervision,* 45 F.3d 322, 326 (9th Cir. 1995) (observing that it is "permissible" for the trier of fact to draw such adverse inferences).
>
> **"[A] party who asserts the privilege against self-incrimination must bear the consequence of lack of evidence**, and the claim of privilege will not prevent an adverse finding or even summary judgment if the litigant does not present sufficient evidence to satisfy the usual evidentiary burdens in the litigation." *4003–4005 5th Ave.,* 55 F.3d [78] at 83 [2nd Cir. 1995]…; *see also LiButti v. United States,* 178 F.3d 114, 120 (2d Cir. 1999) (noting that it is permissible to give an adverse inference "significant

weight," as "silence when one would be expected to speak is a powerful persuader").

*Louis Vuitton Malletier S.A. v. LY USA, Inc.,* **676 F.3d 83, 97-98 (2nd Cir. 2012) (emphasis added).**[2]

Eighteen years ago, the Seventh Circuit Court of Appeals declared: "The rule that adverse inferences may be drawn from Fifth Amendment silence in civil proceedings has been widely recognized by the circuit courts of appeals, including our own, in the two decades since *Baxter [v. Palmigiano,* 425 U.S. 308 (1976)] was decided." *LaSalle Bank Lake View v. Seguban,* **54 F.3d 387, 390 (7th Cir. 1995).** *See also In re High Fructose Corn Syrup Antitrust Litigation,* **295 F.3d 651, 663 (7th Cir. 2002) (citing** *Baxter* **for the proposition that the general rule is that an adverse inference may be drawn from a witness' refusal to answer questions in a civil case).** The Seventh Circuit has interpreted *Baxter* to mean that "the negative inference against a witness who invokes the Fifth Amendment in a civil case is permissive, not required." *Evans v. City of Chicago,* **513 F.3d 735, 740-41 (7th Cir. 2008).**

In the case *sub judice*, the Government is understandably frustrated by being denied depositions and meaningful discovery via the Claimants' assertion of their privilege against self-incrimination. The Davises' blanket invocation of the Fifth Amendment as soon as the stay on discovery was lifted -- when they likely would be pressed to explain how, within years of declaring bankruptcy, they could amass over

---

[2] The Government argues that this inference is especially appropriate when, as here, "there is no indication that there is a parallel criminal proceeding currently pending" against Claimants/the Davises (Doc. 34, p. 3).

$300,000 in cash and why it was packaged as it was, etc. -- give rises to an inference that answers to such questions would not have been favorable to the Davises.  But the adverse inference from an assertion of Fifth Amendment privilege is not sufficient, standing alone, to warrant judgment in favor of the Government.  *See LaSalle*, **54 F.3d at 391-92.**

The Court has carefully considered the other indicia of forfeitability of the *res*, submitted by the Government in support of summary judgment, including (1) the amount of cash involved, (2) the concealment of the currency, (3) the positive alert by two drug-detecting canines, (4) the packaging of the currency, (5) the route traveled by Randy Davis, (6) Randy Davis' prior "record" of hauling drugs, and (7) the inconsistency of the logbooks and documents found in the cab during the traffic stop.  Some of these factors may be persuasive (e.g., expert testimony regarding the packaging of the cash as typical of money involved in drug transactions), whereas others are less so (e.g., the mere fact there is a large amount of cash proves nothing).  *See **$506,231 in U.S. Currency**, **125 F.3d at 454 ("We reiterate that the government may not seize money, even half a million dollars, based on its bare assumption that most people do not have huge sums of money lying about, and if they do, they must be involved in narcotics trafficking or some other sinister activity.  Moreover, the government may not require explanations for the existence of large quantities of money absent its ability to establish a valid narcotics-nexus.").**

Additionally, "a well-trained dog's alert establishes a fair probability … that either drugs or evidence of a drug crime … will be found," *Florida v. Harris,* **-- S.Ct. --,**

**2013 WL 598440, \*5 n.3 (Feb. 19, 2103),** and more recent caselaw and scientific data weaken the Davises' argument based on the once-popular theory that a significantly large percentage of U.S. currency in general circulation is "tainted" with narcotics, rendering drug dog alerts inherently unreliable. *See, e.g., Thirty Thousand Six Hundred Seventy Dollars,* **403 F.3d at 455-56, 459-60 ("We therefore conclude that the empirical information provided in this case indicates that dog alerts to currency should be entitled to probative weight").** But potential problems exist here as to one of the two alerts, and concerns arise as to the apparent failure to corroborate the K-9 alerts with any lab analysis of the seized bills for narcotics residue.

In sum, issues of material fact remain, and the Government has not shown that it is entitled to judgment as a matter of law. Stated another way, viewing all facts and reasonable inferences in the light most favorable to the Davises, a rational trier of fact could find in the Davises' favor. Of course, that summary judgment standard does not apply at trial.

E.  Conclusion

Genuine issues of material fact remain which are "best resolved by the trier of fact" and preclude summary judgment. *Pagel v. TIN Inc.,* **695 F.3d 622, 628 (7th Cir. 2012).** Accordingly, the Court **DENIES** the summary judgment motion (Doc. 33).

IT IS SO ORDERED.

DATED March 1, 2013.

s/ Michael J. Reagan  
Michael J. Reagan  
United States District Judge